Search Warrant

# UNITED STATES DISTRICT COURT

### for the
### District of Arizona

| | |
|---|---|
| In the Matter of the Search of | |
| _____ | |
| Information associated with Instagram account TyTall95 that is stored at premises controlled by Facebook, Inc., headquartered in Menlo Park, California | Case No.   22-4028MB |

## SEARCH AND SEIZURE WARRANT

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the Northern District of California.
(identify the person or describe the property to be searched and give its location):

### As further described in Attachment A.

The person or property to be searched, described above, is believed to conceal (identify the person or describe the property to be seized):

### As set forth in Attachment B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

YOU ARE COMMANDED to execute this warrant on or before     February 10, 2022
*(not to exceed 14 days)*

☐ in the daytime 6:00 a.m. to 10 p.m.
☒ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge.

Any U.S. Magistrate Judge on duty in AZ
          *(name)*
☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*        ☐ for  days *(not to exceed 30)*
                                                    ☐ until, the facts justifying, the later specific date of _____.

Date and time issued: _____          Camille D. Bibles  Digitally signed by Camille D. Bibles
                                                        Date: 2022.01.27 11:42:54 -07'00'
                                                        *Judge's signature*

City and State: _____Flagstaff, Arizona_____          ___Honorable Camille D. Bibles, U.S. Magistrate Judge___
                                                        *Printed name and title*

AO 93 (Rev. 01/09) Search and Seizure Warrant (Page 2)

## RETURN

| Case No.: 22-4028MB | Date and Time Warrant Executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory Made in the Presence of:

Inventory of the property taken and name of any person(s) seized:

## CERTIFICATION

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date:

Executing officer's signature

Printed name and title

## ATTACHMENT A

### Particular Items to be Searched

This warrant applies to information associated with Instagram account TyTall95 (ID 1625904800), active on, but not limited to, 12/23/2021, that is stored the at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

## ATTACHMENT B

### Particular Things to be Seized

**I.     Information to be disclosed by Facebook, Inc. ("Facebook")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Facebook, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each account or identifier listed in Attachment A:

A.     All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.     Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

2.     All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

3.     Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

4.     Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

5.     All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.    Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from January 1, 2019 to December 1, 2021;

7.    Privacy and account settings, including change history; and

8.    Communications between Facebook and any person regarding the account, including contacts with support services and records of actions taken;

B.    All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from January 1, 2019 to December 1, 2021;

C.    All content, records, and other information relating to communications sent from or received by the Account from January 1, 2019 to December 1, 2021, including but not limited to:

1.    The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.    All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.    All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.    All associated logs and metadata;

D.    All content, records, and other information relating to all other interactions between the Account and other Instagram from January 1, 2019 to December 1, 2021, including but not limited to:

1.    Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows,

approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2.      All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3.      All contacts and related sync information; and

4.      All associated logs and metadata;

E.      All records of searches performed by the account from January 1, 2019 to December 1, 2021; and

F.      All location information, including location history, login activity, information geotags, and related metadata from January 1, 2019 to December 1, 2021.

Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

### Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Sexual Abuse of a Minor from January 1, 2019 to December 1, 2021.

a.      Graphic images submitted to minors;

b.      Request for graphic images of minors;

c.      Grooming of minors; sexual in nature;

d.      Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

e.      Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

    f.      The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

FAX or Internet

# UNITED STATES DISTRICT COURT

for the
District of Arizona

In the Matter of the Search of:

| | |
|---|---|
| Information associated with Instagram account TyTall95 that is stored at premises controlled by Facebook, Inc., headquartered in Menlo Park, California | )<br>)<br>)<br>)<br>)    Case No.   22-4028MB |

## ELECTRONIC APPLICATION FOR SEARCH AND SEIZURE WARRANT

I, F.B.I. Special Agent Louis-Philippe Noel, a federal law enforcement officer for the government, request an electronic search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**See Attachment A, hereby incorporated by reference.**

located in the Northern District of California, there is now:

**See Attachment B, hereby incorporated by reference.**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- [X] evidence of a crime;
- [X] contraband, fruits of crime, or other items illegally possessed;
- [ ] property designed for use, intended for use, or used in committing a crime;
- [ ] a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. §§ 1153 and 2243 | Sexual Abuse of a Minor |

The application is based upon the following facts:

- [X] Continued on the attached sheet (see attached **Affidavit**).
- [ ] Delayed notice _____ days (give exact ending date if more than 30 _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Reviewed by AUSA Ryan Powell   *Ryan Powell*

Pursuant to 28 U.S.C. § 1746(2), I declare under penalty of perjury that the foregoing is true and correct.

Executed on: 1/26/2022

_____
*Applicant's Signature*

Louis-Philippe Noel, F.B.I. Special Agent
*Printed Name and Title*

**Sworn by Telephone**

Date/Time: _____

Date:   01/27/2022 _____

City and State:   Flagstaff, AZ _____

Camille D. Bibles

Digitally signed by Camille D. Bibles
Date: 2022.01.27 11:42:26 -07'00'

_____
*Judge's Signature*

Camille D. Bibles,
United States Magistrate Judge
*Printed Name and Title*

## ATTACHMENT A

### Particular Items to be Searched

This warrant applies to information associated with Instagram account TyTall95 (ID 1625904800), active on, but not limited to, 12/23/2021, that is stored the at premises owned, maintained, controlled, or operated by Facebook, Inc., a company headquartered at 1601 Willow Road, Menlo Park, California.

**ATTACHMENT B**

**Particular Things to be Seized**

I. **Information to be disclosed by Facebook, Inc. ("Facebook")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Facebook, or has been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each account or identifier listed in Attachment A:

    A.    All business records and subscriber information, in any form kept, pertaining to the Account, including:

        1.    Identity and contact information (past and current), including full name, e-mail addresses, physical address, date of birth, phone numbers, gender, hometown, occupation, websites, and other personal identifiers;

        2.    All Instagram usernames (past and current) and the date and time each username was active, all associated Instagram and Facebook accounts (including those linked by machine cookie), and all records or other information about connections with Facebook, third-party websites, and mobile apps (whether active, expired, or removed);

        3.    Length of service (including start date), types of services utilized, purchases, and means and sources of payment (including any credit card or bank account number) and billing records;

        4.    Devices used to login to or access the account, including all device identifiers, attributes, user agent strings, and information about networks and connections, cookies, operating systems, and apps and web browsers;

        5.    All advertising information, including advertising IDs, ad activity, and ad topic preferences;

6.     Internet Protocol ("IP") addresses used to create, login, and use the account, including associated dates, times, and port numbers, from January 1, 2019 to December 1, 2021;

7.     Privacy and account settings, including change history; and

8.     Communications between Facebook and any person regarding the account, including contacts with support services and records of actions taken;

B.     All content (whether created, uploaded, or shared by or with the Account), records, and other information relating to videos (including live videos and videos on IGTV), images, stories and archived stories, past and current bios and profiles, posts and archived posts, captions, tags, nametags, comments, mentions, likes, follows, followed hashtags, shares, invitations, and all associated logs and metadata, from January 1, 2019 to December 1, 2021;

C.     All content, records, and other information relating to communications sent from or received by the Account from January 1, 2019 to December 1, 2021, including but not limited to:

1.     The content of all communications sent from or received by the Account, including direct and group messages, and all associated multimedia and metadata, including deleted and draft content if available;

2.     All records and other information about direct, group, and disappearing messages sent from or received by the Account, including dates and times, methods, sources and destinations (including usernames and account numbers), and status (such as delivered, opened, replayed, screenshot);

3.     All records and other information about group conversations and video chats, including dates and times, durations, invitations, and participants (including usernames, account numbers, and date and time of entry and exit); and

4.     All associated logs and metadata;

D.     All content, records, and other information relating to all other interactions between the Account and other Instagram from January 1, 2019 to December 1, 2021, including but not limited to:

1.     Interactions by other Instagram users with the Account or its content, including posts, comments, likes, tags, follows (including unfollows,

approved and denied follow requests, and blocks and unblocks), shares, invitations, and mentions;

2. All users the account has followed (including the close friends list), unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow, and of users who have followed, unfollowed, blocked, unblocked, muted, restricted, or denied a request to follow the account;

3. All contacts and related sync information; and

4. All associated logs and metadata;

E. All records of searches performed by the account from January 1, 2019 to December 1, 2021; and

F. All location information, including location history, login activity, information geotags, and related metadata from January 1, 2019 to December 1, 2021.

Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

**Information to be seized by the government**

All information described above in Section I that constitutes fruits, evidence, and instrumentalities of violations of Sexual Abuse of a Minor from January 1, 2019 to December 1, 2021.

a. Graphic images submitted to minors;

b. Request for graphic images of minors;

c. Grooming of minors; sexual in nature;

d. Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the account owner;

e. Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

      f.     The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.

## AFFIDAVIT

I, Louis-Philippe Noel (Affiant), a Special Agent of the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state as follows.

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram account that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), an electronic communications service and/or remote computing service provider headquartered at 1601 Willow Road in Menlo Park, Menlo Park, California.  The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent with the FBI, currently assigned to the Phoenix Division, Flagstaff Resident Agency, in Flagstaff, Arizona. I have been so employed since July 2017. I received training at the FBI Training Academy, and have experience including, but not limited to, investigating major crimes that occur on Indian reservations, and specifically the Navajo Indian Reservation, Indian Country, within the District of Arizona (AZ).

3.      The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended

to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4.      Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. §§ 1153 and 2243, Sexual Abuse of a Minor, have been committed by Tylane Tallsalt (TALLSALT).  There is also probable cause to search the information described in Attachment A for evidence of these crimes and contraband or fruits of these crimes, as described in Attachment B.

## JURISDICTION

5.      This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), & (c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

6.      On October 29, 2021, Navajo Nation Police Officer L. Hatathlie observed a vehicle with its headlights powered on parked on top of a hill in an area known for illegal activity in the Tuba City District.  Officer Hatathlie and Officer E. Yazzie drove to the location at milepost 313 on U.S. Highway 160, located on the Navajo Nation Indian Reservation, where the vehicle was present.  Upon arrival, the officers noticed the vehicle was a white sedan with Arizona plate MZA5B7A, known to belong to TALLSALT.  When the officers approached the vehicle, they activated their overhead lights on their patrol vehicle containing red and blue emergency lights.  Upon approaching the vehicle, the officers noticed the windows were tinted and asked the driver to lower his window.  The driver was identified as TALLSALT.  When TALLSALT lowered the driver's side window, the officers noticed a female passenger in the

front seat covering her legs with what looked like a gray sweater. The officer asked TALLSALT why the vehicle was moving while the officers approached. TALLSALT replied, "Ah, kissing." The officer's asked the female passenger her age (a juvenile, henceforth referred to as K.S.). K.S. replied that she was 15 years old. Upon reviewing TALLSALT's information, the officers determined TALLSALT's age to be 26 years old. TALLSALT stated he did not know K.S. was 15 years of age. TALLSALT stated he was only kissing K.S. and was not sure why K.S.'s pants were lowered to her ankles. K.S. stated when the officers arrived, she was adjusting her underwear because TALLSALT had been touching her "down there."

7.     The Affiant observed the body camera footage provided by Officer Hatathlie. The footage is consistent with Officer Hatathlie's reporting of the situation: When Officer Hatathlie initially asked TALLSALT what they were doing, TALLSALT replied they were just talking. When Officer Hatathlie stated TALLSALT's vehicle was moving when the officers approached the vehicle, and inquired as to the cause of the movement, TALLSALT replied, "Ah, kissing." K.S. had her pants down and was covering herself. K.S. stated TALLSALT had been touching her down there. TALLSALT stated he was unaware what the passenger's age was. TALLSALT stated he has known K.S. for two years. TALLSALT stated K.S.'s parents are unaware that they were together and did not provide consent.

8.     On December 23, 2021, K.S. was interviewed by a Child Forensic Interviewer. K.S. stated she met TALLSALT when she was 13 years old. K.S. and TALLSALT met on Facebook. TALLSALT talked to K.S. about her age via social media, which at the time was 13 years old; TALLSALT was approximately 24 years of age at this point. TALLSALT told K.S. age does not matter.

9.      K.S. told the interviewer TALLSALT parked his vehicle on the hill.  TALLSALT and K.S. were talking when all of the sudden, TALLSALT grabbed K.S.'s leg.  K.S. told TALLSALT he could not do that.  TALLSALT asked K.S. if he could kiss her.  K.S. said "no." TALLSALT placed his hands on K.S.'s legs, mid-thigh.  K.S. told TALLSALT "no." K.S. told the interviewer, "It went the wrong way." K.S. became emotional, and no longer cared what they did.  They started to make out.  TALLSALT started to take off his pants, but K.S. told TALLSALT it was "too far." TALLSALT insisted and did it anyway.  TALLSALT asked K.S. to sit on "it," and she got scared.  She didn't think, and just did it.  They were both in the driver's seat and K.S. was on top of TALLSALT.  When K.S. sat on "it," "it" went inside of her.  "It" went inside of her "uterus." K.S. clarified "it" was TALLSALT's "private part," and his private part went inside of her.  K.S. clarified "it" was his penis.  TALLSALT was kissing her and her neck.  TALLSALT tried to pull off her shirt.  TALLSALT asked if she wanted to keep it going and if they wanted to see each other.  TALLSALT was not wearing a condom ("protection"). What made it stop happening is when the cops pulled up.  She was about to say something to TALLSALT, but that is when the cops came.

10.     On December 23, 2021, the Affiant interviewed K.S. and asked for K.S. to identify the social media accounts TALLSALT utilized to message to her.  K.S. identified the following Instagram Account associated with TALLSALT: TyTall95.

11.     A few weeks after the incident, TALLSALT contacted K.S. on Instagram.  K.S. told TALLSALT she could not talk to him.  TALLSALT asked K.S. if she could go smoke; K.S. replied that she does not do that.  K.S. told TALLSALT that the police officers told her not to contact him.  TALLSALT said he did not care, and he kept messaging K.S. and asking her to

smoke and hang out. K.S. typed "NO" in all capital letters. K.S. blocked his accounts on Facebook and Instagram.

### Background Concerning Instagram

12.     Instagram is a service owned by Facebook, a United States company and a provider of an electronic communications service as defined by 18 U.S.C. §§ 3127(1) and 2510.    Specifically, Instagram is a free-access social networking service, accessible through its website and its mobile application, that allows subscribers to acquire and use Instagram accounts, like the target account(s) listed in Attachment A, through which users can share messages, multimedia, and other information with other Instagram users and the general public.

13.     Facebook collects basic contact and personal identifying information from users during the Instagram registration process.  This information, which can later be changed by the user, may include the user's full name, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, credit card or bank account number, and other personal identifiers.  Facebook keeps records of changes made to this information.

14.     Facebook also collects and retains information about how each user accesses and uses Instagram.  This includes information about the Internet Protocol ("IP") addresses used to create and use an account, unique identifiers and other information about devices and web browsers used to access an account, and session times and durations.

15.     Each Instagram account is identified by a unique username chosen by the user. Users can change their usernames whenever they choose but no two users can have the same usernames at the same time.  Instagram users can create multiple accounts and, if "added" to the

primary account, can switch between the associated accounts on a device without having to repeatedly log-in and log-out.

16.     Instagram users can also connect their Instagram and Facebook accounts to utilize certain cross-platform features, and multiple Instagram accounts can be connected to a single Facebook account. Instagram accounts can also be connected to certain third-party websites and mobile apps for similar functionality. For example, an Instagram user can "tweet" an image uploaded to Instagram to a connected Twitter account or post it to a connected Facebook account, or transfer an image from Instagram to a connected image printing service. Facebook maintains records of changed Instagram usernames, associated Instagram accounts, and previous and current connections with accounts on Facebook and third-party websites and mobile apps.

17.     Instagram users can "follow" other users to receive updates about their posts and to gain access that might otherwise be restricted by privacy settings (for example, users can choose whether their posts are visible to anyone or only to their followers). Users can also "block" other users from viewing their posts and searching for their account, "mute" users to avoid seeing their posts, and "restrict" users to hide certain activity and prescreen their comments. Instagram also allows users to create a "close friends list" for targeting certain communications and activities to a subset of followers.

18.     Users have several ways to search for friends and associates to follow on Instagram, such as by allowing Facebook to access the contact lists on their devices to identify which contacts are Instagram users. Facebook retains this contact data unless deleted by the user and periodically syncs with the user's devices to capture changes and additions. Users can similarly allow Facebook to search an associated Facebook account for friends who are also Instagram users. Users can also manually search for friends or associates.

19.     Each Instagram user has a profile page where certain content they create and share ("posts") can be viewed either by the general public or only the user's followers, depending on privacy settings.  Users can customize their profile by adding their name, a photo, a short biography ("Bio"), and a website address.

20.     One of Instagram's primary features is the ability to create, edit, share, and interact with photos and short videos.  Users can upload photos or videos taken with or stored on their devices, to which they can apply filters and other visual effects, add a caption, enter the usernames of other users ("tag"), or add a location.  These appear as posts on the user's profile.  Users can remove posts from their profiles by deleting or archiving them.  Archived posts can be reposted because, unlike deleted posts, they remain on Facebook's servers.

21.     Users can interact with posts by liking them, adding or replying to comments, or sharing them within or outside of Instagram.  Users receive notification when they are tagged in a post by its creator or mentioned in a comment (users can "mention" others by adding their username to a comment followed by "@").  An Instagram post created by one user may appear on the profiles or feeds of other users depending on a number of factors, including privacy settings and which users were tagged or mentioned.

22.     An Instagram "story" is similar to a post but can be viewed by other users for only 24 hours.  Stories are automatically saved to the creator's "Stories Archive" and remain on Facebook's servers unless manually deleted.  The usernames of those who viewed a story are visible to the story's creator until 48 hours after the story was posted.

23.     Instagram allows users to broadcast live video from their profiles.  Viewers can like and add comments to the video while it is live, but the video and any user interactions are

removed from Instagram upon completion unless the creator chooses to send the video to IGTV, Instagram's long-form video app.

24.     Instagram Direct, Instagram's messaging service, allows users to send private messages to select individuals or groups.  These messages may include text, photos, videos, posts, videos, profiles, and other information.  Participants to a group conversation can name the group and send invitations to others to join.  Instagram users can send individual or group messages with "disappearing" photos or videos that can only be viewed by recipients once or twice, depending on settings.  Senders can't view their disappearing messages after they are sent but do have access to each message's status, which indicates whether it was delivered, opened, or replayed, and if the recipient took a screenshot.  Instagram Direct also enables users to video chat with each other directly or in groups.

25.     Instagram offers services such as Instagram Checkout and Facebook Pay for users to make purchases, donate money, and conduct other financial transactions within the Instagram platform as well as on Facebook and other associated websites and apps.  Instagram collects and retains payment information, billing records, and transactional and other information when these services are utilized.

26.     Instagram has a search function which allows users to search for accounts by username, user activity by location, and user activity by hashtag.  Hashtags, which are topical words or phrases preceded by a hash sign (#), can be added to posts to make them more easily searchable and can be "followed" to generate related updates from Instagram.  Facebook retains records of a user's search history and followed hashtags.

27.     Facebook collects and retains location information relating to the use of an Instagram account, including user-entered location tags and location information used by Facebook to personalize and target advertisements.

28.     Facebook uses information it gathers from its platforms and other sources about the demographics, interests, actions, and connections of its users to select and personalize ads, offers, and other sponsored content.  Facebook maintains related records for Instagram users, including information about their perceived ad topic preferences, interactions with ads, and advertising identifiers.  This data can provide insights into a user's identity and activities, and it can also reveal potential sources of additional evidence.

29.     In some cases, Instagram users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users.  Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

30.     For each Instagram user, Facebook collects and retains the content and other records described above, sometimes even after it is changed by the user (including usernames, phone numbers, email addresses, full names, privacy settings, email addresses, and profile bios and links).

31.     In my training and experience, evidence of who was using Instagram and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to

establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

32.      Based on my training and experience, messages and photographs are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to an Instagram account may provide direct evidence of the offenses under investigation, and can also lead to the identification of co-conspirators and instrumentalities of the crimes under investigation.  It is the Affiant's belief TALLSALT will have stored communications between himself and K.S. related to Sexual Abuse of Minors.

33.      In addition, the user's account activity, logs, stored electronic communications, and other data retained by Facebook can indicate who has used or controlled the Instagram account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.  For example, subscriber information may be evidence of who used or controlled the account at a relevant time, and device identifiers and IP addresses can help to identify which computers or other devices were used to access the account.  Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

34.      Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation.  For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.*, information indicating a plan to commit a crime), or consciousness of guilt (*e.g.*, deleting account information in an effort to conceal evidence from law enforcement).

35.     Other information connected to the use of an account may lead to the discovery of additional evidence.  For example, accounts are often assigned or associated with additional identifiers such as account numbers, advertising IDs, cookies, and third-party platform subscriber identities.  This information may help establish attribution, identify and link criminal activity across platforms, and reveal additional sources of evidence.

36.     Therefore, Facebook's servers are likely to contain stored electronic communications and information concerning subscribers and their use of Instagram.  In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

37.     Here, K.S. reported that she met TALLSALT on Facebook and that they discussed her age while communicating on social media.  Their social media communications included messages on Instagram.  K.S.'s age at the time they met was 13, and TALLSALT was in his mid-20's.  K.S.'s age, and TALLSALT's knowledge of her age, are relevant factors to potential charges and defenses under 18 U.S.C. §§ 1153 and 2243, Sexual Abuse of a Minor.

## INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED

38.     I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

39.     Based on the foregoing, I request that the Court issue the proposed search warrant.

40.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

41.     Pursuant to 28 U.S.C. § 1746(2), I declare that the foregoing is true and correct to the best of my knowledge and belief.

Dated: 1/26/2022

Special Agent Louis-Philippe Noel
Federal Bureau of Investigation

Subscribed and sworn to telephonically this   27th   day of January, 2022.

Camille D. Bibles   Digitally signed by Camille D. Bibles
                     Date: 2022.01.27 11:41:55 -07'00'

HONORABLE CAMILLE D. BIBLES
United States Magistrate Judge
District of Arizona